[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action asking that a marriage be dissolved. All jurisdictional requirements for its maintenance have been met.
The parties intermarried on February 22, 1957 in Coral Gables, Florida. There are three children issue of the marriage. All have reached their majority. The marriage has broken down irretrievably with no hope for reconciliation. It is dissolved.
The defendant was a truck driver operating locally and over the road. He was a heavy drinker in the early years of the marriage. His drinking combined with a bad temper resulted in several occasions when he assaulted the children or the plaintiff which caused injuries to her. On such occasions she would protect him by claiming she had sustained the injuries through falls in their home. The defendant eventually did stop drinking and began to get help for this drinking. However, the plaintiff decided she could stand the abuse no longer and moved out of the family home at 45 Clark Street in Ansonia to a mobile home in Bacon Falls which she had purchased. She apparently hoped this separation of the parties would ameliorate the situation. It did not, and on January 14, 1991, this action was filed in court.
The court finds the defendant mainly at fault for the breakdown of the marriage. However, the court noted that on cross examination the plaintiff in effect admitted that she contributed to the breakdown by stating "I'm not perfect". The court therefore finds that the plaintiff was to some extent at fault for the breakdown of the marriage.
Besides the testimony in this case, the court had the benefit of ruling on a case involving the defendant. That was in July 1990. The case was Lussier v. J. William Burns, Docket No. CV88 025660, CT Page 8601 in the Judicial District of Ansonia-Milford in Milford. The Memorandum of Decision is dated July 16, 1990. It involved the taking by the defendant of land in Beacon Falls in the name of the defendant in the instant case. Mrs. Lussier in the instant case testified that the amount of money received by the defendant was "about $40,000". In his brief dated April 11, 1994, in the instant case the defendant stated concerning the award: "Further, the husband successfully litigated a land condemnation case without any involvement by the wife and invested the proceeds (approximately $60,601) into the Fidelity Spartan Fund". In fact this court's judgment in that case was: "Judgment may enter for the plaintiff for $48,049 for the taking of the land, plus $1000 for the taking of the structures on the property, plus a fee for the plaintiff's appraiser's report of $1000 plus interest on the excess of the award by this judgment over the original award of the defendant plus costs". That ruling obviously attacks the credibility of both parties in this case.
In 1981 the defendant had to retire as a truck driver. Now he is confined to a wheel chair. He is an Army Veteran and has been able to get medical attention from the Government for several serious physical ailments he now has. At present he has a pension from his Army service, a small pension from his work as a Teamster, social security benefits and dividends on stocks he has managed to acquire over the years.
The plaintiff had only a high school education. But after her children had grown up and left the family home, she became interested in the stock market. Then she and the defendant agreed that some of his earnings would be put by her into the stock market. She did this on a fairly regular basis and was successful at it.
Both the plaintiff and the defendant had been given shares of stock by the defendant's father. The other stocks were acquired over the years and were in both their names, in the name of the plaintiff alone or in the name of the defendant alone.
Both parties suggested to the court that all assets be divided on the basis of the value of the assets and detailed at great length how that division could be done. The plaintiff wanted the assets to be divided on the basis of 55% to her and 45% to the defendant. The court used that idea as a general goal, but found it impossible to achieve the mathematical percentage suggested. CT Page 8602
In the plaintiff's proposed orders dated January 10, 1994 and in the defendant's Financial Affidavit dated January 10, 1994 the court was supplied with the facts of the assets held by both parties and the value put on these assets by the parties. The court notes that the Schedules A and B attached to the defendant's Financial Affidavit were "Based on information provided by Plaintiff". The Court found some differences in this information so it will rely on the information contained in the plaintiff's Proposed Orders. But even as to this information, the court found different values for certain items. Where this has occurred the court averaged the figures.
The court divides the assets as follows.
To the plaintiff:
 Her car 2500 Mobile Home 22,000 Philip Bank accts 59,174 IRA 29,128 Loan to son-in-law 25,000 Jointly held stocks 66,916 Stocks now held by defendant-(except the 237,325 Fidelity Funds hereinafter described) Land Fire Claim of property at Clark Street Ansonia 150,000 ------- 572,043
To the defendant:
 4 cars 5000 IRA 36,885 bank accts 26,767 Fidelity 58,144 Fidelity Spartan 291,198 Joint bank accts 82,987 ------- 500,981
The court awards the plaintiff $100 per week as alimony. CT Page 8603
Each party shall pay the fees of their own attorney.
The defendant may go on the Clark Street property any time to salvage any items he may choose.
THOMAS J. O'SULLIVAN, TRIAL REFEREE